## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

William Lawrence, et al.

       Plaintiffs,

       -vs-


    NVR, Inc.,

       Defendant.

Case No.  1:25CV01454


**JUDGE PAMELA A. BARKER**



**MEMORANDUM OPINION & ORDER**

Currently pending is Defendant NVR, Inc.'s Motion to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 6.)  Plaintiffs William and Victoria Lawrence filed their Response in Opposition on September 18, 2025, to which Defendant replied on October 1, 2025. (Doc. Nos. 8, 9.)  For the following reasons, Defendant's Motion is GRANTED.

## I.     Factual Allegations[1]

On June 2, 2021, Plaintiffs William and Victoria Lawrence ("Plaintiffs") entered into a contract with Defendant NVR, Inc.  ("Defendant" or "NVR") (the "Contract").[2]  (Doc. No. 1-1 at ¶ 6.)  The Contract provided that Plaintiffs would purchase a lot, and Defendant would build a home

---

[1] In setting forth the facts, the Court considers the factual allegations in the Complaint as well as the Exhibits attached thereto (Doc. No. 1-1.)  *See Bassett v. National Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008) (noting that, in ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").  *See also Brent v. Wayne County Dep't of Human Services*, 901 F.3d 656, 694 (6th Cir. 2018).

[2] Contrary to the allegations in the Complaint, this Court notes that Victoria Lawrence is listed as the purchaser and William Lawrence is not named as a co-purchaser in the Contract.  (Doc. No. 1-1 at PageID #s 16, 23.)  Further, the Contract attached to the Complaint is not signed by either Victoria Lawrence or a representative of Defendant NVR.  (*Id.* at PageID #s 22, 24-25.)

on that lot at 9072 Nash Lane (the "Project").  (*Id.* at ¶ 8.)  Paragraph 14 of the Contract provides that:

> **[Plaintiffs] and [Defendant] agree that any and all claims arising out of or relating to this Agreement, Settlement hereunder, or improvements to the Property, regardless of legal theory, except any claims under the Limited Warranty ("Claims"), shall be subject to a one (1) year limitation of action period and bar date. Such claims based on matters occurring before the Settlement Date shall be deemed to have arisen and accrued, if at all, and the one year limitation of action period for all such claims shall begin to run on the Actual Settlement Date. All application of the so-called "discovery rule" is mutually waived by the parties. By executing this Agreement, [Plaintiffs] acknowledge [their] understanding and agreement to these terms and that the said one (1) year period is completely reasonable in all respects. Notwithstanding the foregoing, these bar date terms shall not apply to claims for indemnity and/or contribution by [Defendant] against [Plaintiffs] and/or any other person. These rights may only be enforced by [Plaintiffs] and [Defendant] and nothing herein shall be construed to create any third party beneficiary rights in any other person or entity.**

(Doc. No. 1-1 at PageID # 20) (Bold print as in the original).[3]  "The Project was completed in or around November 2021, and Plaintiffs moved into their new home shortly afterward."  (*Id.* at ¶ 10.)

In 2022, "Plaintiffs began to notice water related issues with their home."  (*Id.* at ¶ 11.)  "Specifically, Plaintiffs noticed that an abnormal amount of water seemed to be entering the home and causing the sump pump to work at an excessive rate."  (*Id.* at ¶ 12.)  "Plaintiffs also began noticing smells that seemed to appear any time it rained in the vicinity of their home."  (*Id.* at ¶ 13.)  In the spring and summer of 2022, Plaintiffs informed Defendant of these issues.  (*Id.* at ¶ 14.)  Defendant "did not inspect the Project in any reasonable manner in 2022 after being informed of the potential water issues with the Project."  (*Id.* at ¶ 15.)  Instead, Defendant informed the developer of the Project which determined that a storm sewer lateral near the front yard of the Project could be the source of

---

[3] In the Motion, Defendant provides that Paragraph 14 is "the only bolded provision in the seven-page contract."  (Doc. No. 6-1 at PageID # 109.)  This Court notes that while other portions of the Contract are bolded, *see, e.g.*, (Doc No. 1-1 at PageID # 18, ¶ 6) (**THE LIMITED WARRANTY**…), Paragraph 14 is the only provision bolded in its entirety.

the excessive water.  (*Id.* at ¶¶ 16-17.)  In 2023, the developer repaired the storm sewer lateral, but "that did not solve the problems with water related to the Project."  (*Id.* at ¶¶ 18-19.)  Indeed, "[a]fter the storm lateral repair was completed, the smells after rain continued, and the Project continued to suffer from excessive water that caused Plaintiffs' sump pump to remove water at a high rate."  (*Id.* at ¶ 20.)  "Plaintiffs continued to notify Defendant of the ongoing problems related to the Project." (*Id.* at ¶ 21.)

"[I]n December 2024, approximately three years after the Project was completed, Plaintiffs' basement flooded."  (*Id.* at ¶ 22.)  "Plaintiffs immediately informed Defendant."  (*Id.* at ¶ 23.) Defendant "informed the City of North Ridgeville ["the City"], and the City came to check the Project in order to determine whether they could be at fault."  (*Id.* at ¶ 24.)  "First, the City checked the storm lateral, which was fine."  (*Id.* at ¶ 25.)  "Then the City checked to see if the water inside Plaintiffs' home was chlorinated, which would indicate that it was City water entering the project, but the water was not chlorinated."  (*Id.* at ¶ 26.)  "The lack of chlorination meant that the water was storm water of some sort."  (*Id.* at ¶ 27.)  Defendant "was made aware that storm water flooded the Project" but "did nothing to fix the flooding or water intrusion problems with the Project."  (*Id.* at ¶ 28-29.) Defendant "also did nothing to inspect the Property or determine a source of the flooding."  (*Id.* at ¶ 30.)

"On or around January 3, 2025, less than a week after Plaintiffs' basement flooded, Plaintiffs informed NVR that they believed the retention ponds at the rear of the Project were causing the flooding."  (*Id.* at ¶ 31.)  "NVR did not do any of its own investigation" but "punted investigation responsibilities to another, this time Paul Haney, from the management company for Plaintiffs'

3

HOA." (*Id*. at ¶ 33.)  Mr. Haney told NVR and the City that he had "inspected the ponds and found no issues." (*Id.* at ¶ 34.)

Plaintiffs "sought additional opinions" and "reviewed their own pictures from construction and noticed an image showing an underground drain that was cut through and damaged by NVR (or its subcontractor) during excavation for the Project." (*Id.* at ¶ 36.)  "Plaintiffs informed Defendant of this situation on February 20, 2025, so that NVR could inspect the issue." (*Id.* at ¶ 37.)  However, "NVR never responded to that email and never sent anyone out to investigate the issue." (*Id.* at ¶ 38.)

"Instead, Plaintiffs had to hire American Earth Companies ("American Earth") to fully determine the cause of the excess water entering Plaintiffs' home." (*Id.* at ¶ 39.)  On March 28, 2025, American Earth performed an inspection of the Project and "found the drain in question that was cut by NVR during construction, and [] determined that this drain came from the pond, the drain was wet (meaning it was active), and the drain was the source of the additional water entering Plaintiffs' home." (*Id.* at ¶ 42.)  American Earth also found that "NVR (or its subcontractor) was aware of the damaged drain because they attempted to cover the broken drain with stone, but they did not properly seal the drain." (*Id.* at ¶ 43.)  After excavating and determining the issue, American Earth capped the drain at issue, and attempted to close the drain at its source. (*Id.* at ¶ 44.)  "Both of the fixes mentioned [above] appear to have worked, because Plaintiffs have not suffered any additional water intrusion issues since American Earth performed the fix." (*Id.* at ¶ 45.)

Plaintiffs allege that, as a result of Defendant's alleged breach, they suffered damages, including (1) the cost of multiple plumbers' visits to determine the source of the flooding, (2) the cost of additional sump pumps, (3) over $25,000 in physical damage from the flooding, (4) the expected

4

cost of redoing Plaintiffs' finished basement and replacing Plaintiffs' patio, which "has sunk to a point where it needs to be replaced," (5) the expense of American Earth's investigation and repairs, (6) the fees for the landscaper who repaired damage from American Earth's exploratory digging, and (7) any additional damage that Plaintiffs may continue to suffer as a result of Defendant's alleged breach of the Contract.  (*Id.* at ¶¶ 46-54.)

## II.    Procedural History

On June 23, 2025, Plaintiffs filed a Complaint against Defendant in the Lorain County Court of Common Pleas, asserting claims for (1) breach of contract (Count One); and (2) violations of the Home Construction Service Suppliers Act ("HCSSA"), R.C. 4722 *et seq*.  (Count Two).  (Doc. No. 1-1.)  In Count One, Plaintiffs allege that "NVR breached the Contract by failing to complete the Project in a workmanlike manner, failing to cap and seal the drain exposed during construction, and causing other damages related to their breaches of the Contract."  (*Id.* at ¶ 57.)  In Count Two, Plaintiffs allege, in relevant part, that Defendant violated the HCSSA by "fail[ing] to perform the home construction service in a workmanlike manner, by cutting the drain and then failing to adequately seal the drain to prevent excess water from entering Plaintiffs' home." (*Id.* at ¶ 64.) Plaintiffs seek actual damages as described above, as well as $10,000 in noneconomic damages, attorney's fees and costs, and any pre-judgment and post judgment interest.  (*Id.* at ¶¶ (1)-(4).)

On July 11, 2025, Defendant removed this case to this Court on the basis of diversity jurisdiction.  (Doc. No. 1.)  On August 18, 2025, Defendant filed its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Doc. No. 6.)  Plaintiffs filed their Response in Opposition on September 18, 2025, to which Defendant replied on October 1, 2025.  (Doc. Nos. 8, 9.)

On February 5, 2026, this Court ordered "supplemental briefing to fully evaluate Plaintiffs' argument that the one-year limitations clause at issue is void as against public policy under Ohio law." (Doc. No. 12 at PageID # 162.) On February 12, 2026, Plaintiffs submitted their Supplemental Briefing on Public Policy Issue ("Plaintiffs' Supplemental Brief"). (Doc. No. 13.) On February 19, 2026, Defendant submitted its Supplemental Brief on Public Policy in Support of the Motion ("Defendant's Supplemental Brief"). (Doc. No. 14.) Thus, the Motion is ripe for this Court's review.

## III. Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–556 (2007)). For purposes of both Rule 12(b)(6) and Rule 12(c), "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citation and quotation marks omitted).

The measure of a Rule 12(b)(6) challenge — whether the Complaint raises a right to relief above the speculative level — "does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*., 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555–556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

6

556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting in part *Erickson v. Pardus*, 551 U.S. 89 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

## IV.  Analysis

Defendant moves to dismiss Plaintiffs' Complaint on the ground that Plaintiffs' claims are time-barred under Paragraph 14 of the Contract.  Defendant argues that the one-year limitations clause in Paragraph 14 is valid and enforceable because (a) the clause's language is "clear, direct, and prominently featured" in the parties' Contract since it is the only bolded provision in the seven-page contract; (b) Plaintiffs expressly acknowledged the reasonableness of the limitation clause in the Contract; and (c) the limitation clause does not deprive Plaintiffs of the right to bring their claims, it just reasonably requires that they do so within a reasonable and agreed-upon timeframe.  (Doc. No. 6-1 Page IDs #s 109-10.)  According to Defendant, application of the one-year limitations clause to Plaintiffs' claims requires dismissal of them as time-barred.  That is because Plaintiffs settled in their

7

home in November 2021, but did not file suit until over three years later, in June 2025.  (*Id*. at PageID # 111.)  Defendant maintains that the discovery rule is not applicable to extend the time within which to file suit because the parties expressly agreed in Paragraph 14 that the discovery rule is not applicable to claims made under the Contract.  *Id*.  Lastly, Defendant argues that Plaintiffs should not be granted leave to amend.  Defendant asserts that amendment would be futile because Plaintiffs can plead no set of facts that would make their claims timely.  (*Id*. at PageID # 112.)

In their Response, Plaintiffs argue that the one-year limitations clause is unreasonable because:  first, it acts to limit Plaintiffs' claims, even before they could learn of claims or learn of the cause of the claim; and second, because it goes directly against Ohio's public policy of protecting consumer homeowners who contract with home construction service suppliers like NVR and NVR drafted the limitations clause to avoid liability under the HCSSA.  (Doc. No. 8 at Page IDs # 129-30.)  Plaintiffs contend that "Ohio courts have not fully wrestled with the issue of whether a limitation clause, which acts as a waiver of a general contractor's duty to build in a workmanlike manner and a waiver of claims for latent defects that are not discoverable within the limitations period is reasonable."  (*Id.* at Page ID #s 130-33.)  Plaintiffs posit that as applied to them, the limitations clause is unreasonable because the "defect was not fully discovered until after the expiration of the limitations period" and that "Defendant is attempting to contract away any duty to handle the latent defects" such as its implied duty to perform in a workmanlike manner.  (*Id*. at PageID # 132.)

In its Reply, Defendant reiterates the statements it made in the Motion while responding to the arguments that Plaintiffs raised in their Response.  First, Defendant contends that the one-year limitations clause is a valid limitation, not a "waiver" of rights.  (Doc. No. 9 at PageID # 139.)  Second, it asserts that Plaintiffs' public policy argument fails because (a) they already agreed that the

Contract was reasonable and (b) the cases on which they base this claim are inapposite insurance cases. (*Id.* at PageID # 141.) Third, they argue that Plaintiffs' latent defect argument fails because they observed the water intrusion and notified NVR of it within the one-year limitations period, which is inconsistent with their proposition that the defect was unknowable; and even if the defect was undiscoverable, the parties expressly waived the discovery rule. (*Id.* at PageID #s 139, 142.) Lastly, Defendant contends that Plaintiffs were not without remedy to resolve the issue since they could have, but did not, bring a claim under the Contract's Limited Warranty. (*Id.* at PageID # 143.)

After reviewing the initial briefing, this Court ordered "supplemental briefing to fully evaluate Plaintiffs' argument that the one-year limitations clause at issue is void as against public policy under Ohio law." (Doc. No. 12 at PageID # 162.) The Court explained:

> In their Brief in Opposition, Plaintiffs argue (among other things) that the one-year limitation clause contained in Paragraph 14 of the parties' Contract "is against public policy, as it acts as an unlawful and unenforceable waiver of the duty to build in a workmanlike manner, by unreasonably limiting claims under the HCSSA based on latent defects." (Doc. No. 8 at PageID # 134.) While Plaintiffs assert that this public policy issue is "extremely important in this case," (*id.* at PageID # 130), they fail to cite any authority in support of their argument that the one-year limitation clause herein is void as against public policy. Specifically, Plaintiffs fail to recite any law, generally, regarding the circumstances under which a contractual provision may be found void as against public policy under Ohio law. Nor do Plaintiffs direct this Court's attention to any authority in which courts have directly considered whether limitations clauses in residential construction agreements are void as against public policy, in light of provisions of the HCSSA that (1) require suppliers to perform home construction services in a workmanlike manner, and/or (2) prohibit making the performance of such home construction services contingent upon an owner's waiver of any rights under the HCSSA.
>
> And, while Defendant maintains that the district court in *Amos v. NVR, Inc.*, 2022 WL 980676 (S.D. Ohio March 31, 2022) "has already rejected the very public policy argument Plaintiffs advance here," (Doc. No. 9 at PageID # 141), the Court disagrees. In fact, in *Amos*, the court distinguished the two insurance cases cited by the plaintiff therein by stating that "[i]n contrast, this case deals with a home construction contract and **the briefs do not address why its enforcement does or**

9

**does not comport with public policy**."  *Amos*, 2022 WL 980676 at \*5 (emphasis added).

(*Id*. at PageID #s 161-62.)

In Plaintiffs' Supplemental Brief, Plaintiffs first assert that the HCSSA, R.C. 4722 *et seq.*, and the Ohio Consumer Sales Practices Act ("CSPA"), R.C. 4722 *et. seq.*,[4] show that "that Ohio has a long history of protecting consumer purchasers of home construction, or that Ohio public policy is in favor of protecting consumers who purchase new construction homes."  (Doc. No. 13 at PageID # 164.)

Second, Plaintiffs argue Ohio's public policy favors increasing rather than decreasing the amount of time homeowners have to bring claims for latent defects where new construction is involved.  (*Id*. at PageID #s 165-66.)  To support this proposition, Plaintiffs reference R.C. 2305.131, which Plaintiffs argue extends the statute of repose from four (4) years to ten (10) years for latent defects.  (*Id.* at PageID # 164.)  Plaintiffs also cite to the decisions in *Conte v. Blossom Homes, L.L.C.*, 63 N.E.3d 1245, 1255 (Ohio App. 8th Dist. 2016), and *R.E. Holland Excavating v. Board of County Commissioners*, 729 N.E.2d 1255, 1259 (Ohio App. 2d Dist. 1999) in "support of the idea that limitation periods that expire before the discovery of defects are not limitations periods, but instead nullification of claims."  (Doc. No. 13 at PageID # 164.)

---

[4] Plaintiffs argue that "[a]fter August 31, 2012, contracts for home construction in excess of $25,000 were no longer covered by the CSPA, and now instead fell under the purview of the HCSSA."  (Doc. No. 13 at PageID # 163.)  However, the law does not treat the HCSSA as a successor of the CSPA.  In *Lambright v. New Age Dome Construction, LLC,* a district court held that "[c]onstruction contracts for repairs or remodeling at existing residential properties are within the reach of the CSPA."  2025 WL 580985, at \*5 (N.D. Ohio Feb. 21, 2025) (Helmick, J.) (citing *A1 Heating & Cooling, Inc. v. Thomas*, 2024 WL 157882, at \*8 (Ohio App. 8th Dist. Jan. 12, 2024)) (citation omitted).  There, the court held that the HCSSA and the CPSA "are different laws, with different purposes and different requirements."  *Id.* at \*6 (citing *Hanamura-Valashinas v. Transitions by Firenza, LLC*, 160 N.E.3d 359, 370 (Ohio App. 3d Dist. 2020)); *see also Amos*, 2022 WL 980676 at \*1 (allowing the plaintiffs' CSPA claim to proceed to trial but granting summary judgment as to their HCSSA claim).

10

Plaintiffs maintain that the statute of repose likewise supports this notion of nullification.  (*Id*.) Specifically, Plaintiffs assert that the statute of repose rejects the view not only "that a contractual limitations clause should be allowed to limit the time to bring a suit for a latent defect" but that "the public policy also rejects Defendant's attempts to get Plaintiffs to waive the 'discovery rule,' by acknowledging that some discovery of latent defects simply is not possible within a four year period and may take up to ten years to discover."  (*Id*. at PageID #s 164-65.)  They argue that "[t]he statute of repose makes sense in cases of construction, where many items are hidden from view and may not be discovered for quite some time after moving in," and thus the cases that Defendant references can be distinguished because they did not involve latent defects and involved breaches of contract,[5] "auto insurance accidents, commercial dealer agreements or punch list work known to both parties."  (*Id*.) Plaintiffs even go so far as to say that "contractual limitations do not make sense in the context of new construction," which is why the Ohio legislature created the statute of repose.  (*Id*.)

Third, Plaintiffs contend that the duty to build in a workmanlike manner cannot be waived. *See* (*id*. a PageID # 166) (citing *Mitchem v. Johnson*, 218 N.E.2d 594 (Ohio 1966) and *Jones v. Centex Homes*, 967 N.E.2d 1199 (Ohio 2012)).  They argue this duty has existed for over sixty (60) years and reiterate that purchasers of new construction have ten (10) years to bring suit when latent defects are involved.  (*Id*.)  Plaintiffs maintain that the one year limitations clause in the parties' Contract attempts to halt those protections, contending that "[a] 'limitation period' that expires before suit can be brought is not really a limitation period at all, but simply a nullification of the claim."  (*Id*.) (citing

---

[5] Plaintiffs assert that "[i]n the case of a breach of contract, it makes sense to allow a limitation clause, because the statute of limitations for a breach of contract case is lengthy, but often the contract itself is completed in a small timeframe, with no possibility of additional breaches."  (*Id*.)  However, this Court notes that here, Plaintiffs bring a claim for breach of contract.  *See* (Doc. No. 1-1 at ¶¶ 55-58¸ PageID #s 13-14.)

*Conte,* 63 N.E.3d at 1255) (quoting *Executive Plaza, LLC v. Peerless Ins. Co.,* 5 N.E.3d 989, 992 (2014)) (citation omitted); *see also* (*id.*) (citing *Litsinger v. Forest River, Inc*., 536 F. Supp. 3d 334, 349 (N.D. Ind. 2021)).

Fourth and finally, Plaintiffs argue that "[e]liminating the duty to build in a workmanlike manner nullifies protections of the [HCSSA]."  (*Id.* at PageID # 167) (emphasis omitted).  Plaintiffs repeat that "latent defects often are not discoverable within one year of living in a home." (*Id.*)  Plaintiffs also maintain that Defendant's argument that Plaintiffs could still bring a claim under the Contract's Limited Warranty "circumvents and avoids the public policy argument related to the HCSSA." (*Id.*)  They contend that Defendant should not be allowed to "shave nine years off its duty to build in a workmanlike manner."  (*Id.*) (emphasis omitted).  Plaintiffs end by asserting that allowing the time limitation would negate the prohibitions of the HCSSA (R.C. 4722 *et seq*.), R.C. 2305.131, and the Ohio Supreme Court's finding that the duty to perform in a workmanlike manner cannot be waived.  (*Id.* at PageID # 168.)

In Defendant's Supplemental Brief, it argues that Plaintiffs still fail to identify "an Ohio statute or court decision supporting their contention that a limitations provision in a residential construction contract is void as against public policy."  (Doc. No. 14 at PageID # 170.)  First, Defendant argues that "Ohio courts strongly favor enforcing contractual terms, and Ohio's public policy exception is narrowly applied." (*Id*. at PageID # 172) (emphasis omitted).  Second, it contends that "Ohio law recognizes and enforces reasonable contractual limitations periods— including the one-year period at issue—and Plaintiffs identify no contrary Ohio authority."  (*Id*. at PageID # 173) (emphasis omitted).  Third, Defendant maintains that "[t]he HCSSA's anti-waiver provision does not prohibit reasonable limitations periods, and a limitations period is not a waiver of the

workmanlike-manner duty." (*Id.* at PageID # 174) (emphasis omitted). Fourth and finally, Defendant argues that "[t]he construction statute of repose does not express a public policy forbidding contractual limitations periods." (*Id.* at PageID # 176) (emphasis omitted).

This Court will address the parties' arguments below, albeit not in the order that the parties present them.

### A. The Parties Were Permitted to Contract for a Limitation for When Suit Could Be Brought So Long as That Limitation Is Reasonable.

Under Ohio Law, "the parties to a contract may validly limit the time for bringing an action on a contract to a period that is shorter than the general statute of limitations for a written contract, as long as the shorter period is a reasonable one."[6] *Barbee v. Nationwide Mut. Ins. Co.*, 955 N.E.2d 995, 998 (Ohio 2011) (quoting *Sarmiento v. Grange Mut. Cas. Co.,* 835 N.E.2d 692, 696 (Ohio 2005) (citations omitted)); *see e.g., Appel v. Cooper Ins. Co.,* 80 N.E. 955, 956 (Ohio 1907) (finding a six-month contractual limitation to bring suit to be reasonable). As relevant here, "the HCSSA, R.C. 4722.01 et seq., does not contain a statute of limitations." *Amos v. NVR, Inc.* 2022 WL 980676 at *4 (S.D. Ohio Mar. 31, 2022). "And Ohio law provides for a six-year statute of limitations on breach of contract claims." *Id.* (citing R.C. 2305.06).[7] "Thus, for claims not subject to a statute of limitations and for claims that are, the parties to the contract here were permitted to contract for a limitation on when suit could be brought." *Id.* (citation omitted). "However, such a contractual limitations period

---

[6] This Court need not perform a choice of law analysis since both parties agree that Ohio law should govern this action. (Doc. No. 6-1 at PageID #s 107-8; Doc No. 8 at PageID # 130.) In addition, the Contract provides that "[t]his Agreement, its formation and enforcement shall be governed by the laws of the State of Ohio without regard for conflicts of law principles." (Doc. No. 1-1 at ¶ 25, PageID # 21.)

[7] In their Supplemental Brief, Plaintiffs argue that R.C. 2305.131(A)(1) extends the statute of repose from four (4) years to ten (10) years for latent defects. (Doc. No. 13 at PageID # 164) (citing R.C. 2305.131(A)(1)). However, whether the statute of limitations is six (6) or ten (10) years, the parties were still permitted to shorten the statute of limitations through contract.

is valid only if the time provision [1] is unambiguous, [2] is for a reasonable period, and [3] is not in violation of public policy." *Conte v. Blossom Homes, L.L.C.*, 63 N.E.3d 1245, 1254 (Ohio App. 8th Dist. 2016).[8] *See also MRI Software LLC v. Univ. of Minnesota Found. - Dinnaken Hous., LLC*, 2024 WL 3052071, at *6 (N.D. Ohio June 18, 2024) (Calabrese, J.).

Here, Plaintiffs concede that the contractual limitations period is clear and unambiguous. (Doc. No. 8 at PageID # 130.) However, the parties disagree as to whether the clause is "for a reasonable period," (i.e., whether it provided Plaintiffs sufficient time to bring a claim for breach of contract) and whether its enforcement contravenes public policy. Defendant contends that courts have upheld similar limitations. Plaintiffs argue that the cases relied on by Defendant are all distinguishable. For the following reasons, the Court finds that the Contract's one-year time limitation is reasonable and is not void against public policy.

**B. Plaintiffs Were Aware of the Water Issue Within One Year of Construction.**

In support of its argument that the Contract's one year limitations period is reasonable, Defendant relies heavily on *Amos v. NVR. Inc., supra*, a recent case from the Southern District of Ohio that also involved a residential building contract with NVR. In that case, plaintiffs brought an action against NVR, and NVR moved for summary judgment on the grounds that the plaintiffs' claims were barred based on an identical limitations provision prohibiting claims brought one year after the project's closing date. *Amos*, 2022 WL 980676 at *4. There, NVR told plaintiffs the home was almost done, but upon inspection, plaintiffs realized that many tasks, such as planting grass seed, repairing the driveway, grading the lot, etc., had not been completed. Plaintiffs also soon discovered

---

[8] In *Conte*, 63 N.E.3d at 1255, the court did not decide the issue of reasonableness and ultimately held that it was "within the purview of the arbitrator to determine the reasonableness of the reduced statute of limitations, and to determine whether there is any tension between the limitation and Ohio law." Nonetheless, in *Conte*, the state appellate court recites the three elements that this Court should look to when evaluating time limitations in contracts.

14

that NVR's construction of the floor "did not comply with the building code and that it compromised the floor's structural integrity." *Id*. at *1. NVR refused to perform any work on the outdoor issues until the parties reached a settlement on the outstanding problems. Settlement discussions broke down, and plaintiffs filed a lawsuit against NVR a little over a year later. *Id*. at *2. The court granted NVR's motion for summary judgment as to the plaintiffs' breach of contract and HCSSA claims.[9]

Plaintiffs argue that *Amos* is distinguishable because the deficiencies at issue in that case "did not turn on latent defects." (Doc. No. 8 at PageID # 132.) "A latent defect is a defect that is not readily observable or discoverable through a reasonable inspection." *Benchmark Constr. Co. v. City of Lima*, 2022 WL 4536392, at *10 (N.D. Ohio Sept. 28, 2022) (Knepp II, J.) (citing *Layman v. Binns*, 519 N.E.2d 642, 645 (Ohio 1988)). Plaintiffs argue that, in *Amos*, the plaintiffs knew within the limitations period that NVR had failed to complete the outdoor work and failed to properly construct the floor, yet they did not file a lawsuit until more than a year after the closing date. (Doc. No. 8 at PageID # 132.) By contrast, Plaintiffs herein maintain that they have sufficiently alleged that the deficiencies at issue were latent, i.e., they were not (and could not have been) discovered within the contractual one year time limitation. Defendant posits that this case does not involve a latent defect because Plaintiffs knew of the flooding issues within the one-year statutory period. (Doc. No. 9 at PageID # 139.)

For the following reasons, this Court rejects Plaintiffs' argument that they were unable to bring a claim within the one-year time limitation. As Plaintiffs themselves allege in the Complaint, Plaintiffs did notice water issues within the one-year period and put NVR on notice of the water issues

---

[9] The court denied the motion for summary judgment to the extent it applied to the plaintiffs' breach of warranty claim. Here, the Complaint does not specifically mention the Limited Warranty. However, this Court notes that the Contract contains a provision wherein Plaintiffs acknowledge that they received a copy of the Limited Warranty and that it was "the sole warranty" given to them. (Doc. No. 1-1 at ¶ 6, PageID # 18.)

15

they were seeing.  (Doc No. 1-1 at ¶ 11, PageID # 9.)  Moreover, Plaintiffs allege that they had photographs of the construction, which they reviewed after their basement flooded and which showed that the underground drainage pipe had been cut through and damaged during the excavation of the Project.  (*Id.* at ¶ 36, PageID# 11.)  Plaintiffs offer no reason why they could not have looked or did not look at those photographs within the one-year limitations period to determine the cause of the water problem.  Based on the above, this Court finds that Plaintiffs have alleged that they had sufficient information before them to bring a claim against Defendant during that one-year limitations period.

The cases cited by Defendant in its briefing largely support the Court's ruling.[10]  For example, in  *Universal Windows & Doors, Inc. v. Eagle Window & Door, Inc.*, 689 N.E.2d 56, 59 (Ohio App. 1st Dist. 1996), the state appellate court reversed the trial court's final judgment and upheld a one-year limitation in a dealer agreement, finding that the contractual provision was "clear," plaintiff "knew of the breaches when they occurred," and that the provision "provided an adequate time for settlement negotiations."  *Id*.  In *Universal Windows*, plaintiff knew it had grounds to bring a claim for breach of contract because defendant untimely shipped the subject goods and terminated plaintiff's credit during that one-year time period, but still, plaintiff failed to bring its claim within that period of time.  *Id*.  Here, as this Court has pointed out, Plaintiffs' allegations show that they had sufficient information before them to bring a claim against Defendant during that one-year period, including (1) the smells and "abnormal amount of water" causing excessive sump pump usage in

---

[10] In the Motion, Defendant refers to *Hoskins v. DaimlerChrysler Corporation*, 2005 U.S. Dist. LEXIS 45418 *13 (S.D. Ohio March 30, 2005), to support its argument, but that decision centers around a limitation to bring suit as set forth in an employment contract after plaintiff suffered a workplace accident.  Accordingly, the Court finds that *Hoskins* is not relevant to adjudication of the Motion pending before this Court.

2022; and (2) Plaintiffs' own photographs taken during construction which showed "an underground drain that was cut through and damaged by NVR (or its subcontractor) during the excavation. *See* (Doc No. 1-1 at ¶¶ 11, 36, PageID #s 9, 11.)

Moreover, the Court notes that Ohio courts have upheld provisions with much shorter limitation periods. As Defendant points out, in *R.E. Holland Excavating v. Board of County Commissioners*, the state appellate court, affirming the trial court's order on a motion for summary judgment, upheld a sixty-day time limitation for bringing a claim. 729 N.E.2d 1255, 1259 (Ohio App. 2d Dist. 1999). In that case, the court held that once defendant denied plaintiff's claim, plaintiff knew it had grounds to bring a lawsuit and thus upheld the provision. This Court likewise finds that Plaintiffs were able to bring a claim against Defendant during the one-year period.

### C. Plaintiffs Agreed to Waive the Discovery Rule and Affirmed the Provision's Reasonableness.

Defendant asserts (and this Court agrees) that even if Plaintiffs did not discover the defect until American Earth's inspection in March 2025, Plaintiffs expressly waived application of the discovery rule in the Contract. (Doc. No. 6-1 at PageID # 111.) As noted *supra*, Paragraph 14 of the Contract provides in pertinent part that "**[a]ll application of the so-called 'discovery rule' is mutually waived by the parties.**" (Doc. No. 1-1 at PageID # 20) (Bold print as in the original). (Doc. No. 9 at PageID # 139.) Paragraph 14 is the only bolded provision in the entire Contract. In light of this provision, Plaintiffs cannot now argue that the one-year limitation does not apply to their claims because they could not discover the water intrusion earlier, particularly when they expressly waived the discovery rule.

The Court also agrees with Defendant that Plaintiffs have already affirmed the reasonableness of the time limitation. In *Amos*, the court held:

17

> [T]he Limitations Clause expressly provides that all parties agreed that the one-year period is reasonable. That resolves the matter even under Plaintiffs' legal theory of the case. As long as a limitations period is reasonable and not foreclosed by statute, parties may validly limit between themselves the time within which they can bring a lawsuit. *Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947). Courts enforce such agreements. *Heimeshoff*, 571 U.S. at 115. Here, Plaintiffs agreed that one year was reasonable. That agreement forecloses an argument to the contrary.

*Amos*, 2022 WL 980676 at *5. Here, Paragraph 14 of the Contract expressly provides in pertinent part that "'**[b]y executing this Agreement, [Plaintiffs] acknowledge [their] understanding and agreement to these terms and that the said one (1) year period is completely reasonable in all respects.**'" (Doc. No. 1-1 at PageID # 20) (Bold print as in the original)). In the Contract, therefore, the parties expressly agreed that the time limitation was reasonable, which "forecloses an argument to the contrary." *See Amos*, 2022 WL 980676 at *5. Thus, this Court rejects Plaintiffs' argument that it could not have discovered the water intrusion before 2025, for the additional reason that Plaintiffs expressly waived application of the discovery rule and affirmed that the waiver was reasonable.

**D. Plaintiffs Do Not Show that the Time Limitation is Void Under Public Policy.**

**1. Ohio Law Favors Enforcing Contractual Terms, and the Public Policy Exception is Narrowly Applied.**

Defendant argues that "Ohio courts strongly favor enforcing contractual terms, and Ohio's public policy exception is narrowly applied." (Doc No. 14 at PageID # 172) (emphasis omitted). The Court agrees. The Ohio Supreme Court has explained that the "freedom to contract is a deep-seated right that is given deference by the courts." *Cincinnati City Sch. Dist. Bd. of Educ. v. Conners*, 974 N.E.2d 78, 82–83, 85 (Ohio 2012) (applying the public policy exception to a contract but emphasizing "the importance of the freedom to contract and recogniz[ing] the narrowness of the doctrine on public

18

policy"). "The presumption under Ohio law is the freedom to contract." *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 365 (6th Cir. 2014) (citing *Conners,* 974 N.E.2d at 82-83)). "However, that presumption can be overcome; contracts can still be held unenforceable as against public policy." *Id.* (citing *Conners,* 974 N.E.2d at 83).

"'[C]ontracts which bring about results which the law seeks to prevent are unenforceable as against public policy.'" *Conners,* 974 N.E.2d at 83 (quoting *Eagle v. Fred Martin Motor Co.,* 809 N.E.2d 1161, 1180 (Ohio 2004) (citation omitted)). "[The Court's] duty is to determine when the public-policy exception must be recognized, but it is the 'legislative branch [that] is "the ultimate arbiter of public policy."'" *Id.* (quoting *Arbino v. Johnson & Johnson*, 880 N.E.2d 420, 472 (Ohio 2007)) (quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network v. Dupuis,* 781 N.E.2d 163, 168 (Ohio 2002)); *see also Bohlen v. Anadarko E & P Onshore, LLC*, 26 N.E.3d 1176, 1181 (Ohio App. 4th Dist. 2014), *aff'd sub nom. Bohlen v. Anadarko E & P Onshore, L.L.C.,* 80 N.E.3d 468 (Ohio 2017) ("This exception must be narrowly construed because the General Assembly is the ultimate arbiter of public policy.") (citing *Conners,* 974 N.E.2d at 83) (citing *Arbino*, 880 N.E.2d at 472).

Nowhere in their Supplemental Brief do Plaintiffs acknowledge or address the emphasis that Ohio law places on parties' freedom to contract. This Court acknowledges that Ohio law favors freedom to contract and too finds that the public policy exception should be applied narrowly and only where the contract in question "brings about results which the law seeks to prevent." *Conners,* 974 N.E.2d at 83 (citations omitted).

19

### 2. Ohio Courts Enforce Reasonable Contractual Limitations Periods

Defendant maintains that "Ohio law recognizes and enforces reasonable contractual limitations periods— including the one-year period at issue—and Plaintiffs identify no contrary Ohio authority." (Doc. No. 14 at PageID # 173) (emphasis omitted). In Plaintiffs' Supplemental Brief, they first assert that the HCSSA and the CSPA show that "that Ohio has a long history of protecting consumer purchasers of home construction, or that Ohio public policy is in favor of protecting consumers who purchase new construction homes." (Doc. No. 13 at PageID # 164.) The fact that Ohio law, particularly the HCSSA, strengthens protections for consumers of home construction does not change the fact that the law still allows for parties to contract for shorter time limitations. *See Barbee v. Nationwide Mut. Ins. Co.*, 955 N.E.2d 995, 998 (Ohio 2011) (quoting *Sarmiento v. Grange Mut. Cas. Co.,* 835 N.E.2d 692, 696 (Ohio 2005) (citations omitted)); *Amos v. NVR, Inc.*, 2022 WL 980676 (S.D. Ohio March 31, 2022) (finding identical one year limitation to be reasonable).[11] Even though Plaintiffs correctly point out that Ohio public policy generally supports the protection of consumers of new home construction, this assertion alone is insufficient to support that the public policy exception, which is to be construed narrowly, should apply and prohibit the freedom to contract around these protections.

Accordingly, Plaintiffs' argument that the one-year time limitation is against public policy because such limitations are unreasonable where latent defects are involved also fails. Plaintiffs

---

[11] Defendant argues in its Supplemental Briefing that R.C. 5311.25(E) "demonstrates that the General Assembly has recognized that a one-year window is an appropriate period within which construction-related issues may arise and be addressed." According to Defendant, R.C. 5311.25(E) provides that "condominium developers must provide purchasers with a one-year general warranty covering the repair or replacement of structural, mechanical, and other building elements caused by defects in materials or workmanship." (Doc. No. 14 at PageID # 173). Although Defendant acknowledges that "this requirement applies specifically to condominiums," this Court notes that the comparison falls short since the one-year warranty applies only to individual units, and the statute provides a two-year warranty for construction defects related to the condominium property as a whole. R.C. 5311.25(E)(1)(a).

broadly proclaim that "contractual limitations do not make sense in the context of new construction." (Doc. No. 14 at PageID # 165.); *see also* (Doc. No. 8 at PageID #s 132-33.) In support, Plaintiffs reference the decisions in *Conte v. Blossom Homes, L.L.C.*, 63 N.E.3d 1245, 1255 (Ohio App. 8th Dist. 2016), and *R.E. Holland Excavating v. Board of County Commissioners*, 729 N.E.2d 1255, 1259 (Ohio App. 2d Dist. 1999). However, as discussed below, the Court finds that neither of these decisions support Plaintiffs' argument. In *Conte,* 63 N.E.3d at 1255, the Ohio Eighth District Court of Appeals noted that, "[t]he majority of cases in Ohio on this [public policy] issue involve automobile insurance contracts; however, this case involves a residential construction agreement. What is reasonable in the context of an automobile insurance policy may not be reasonable in a construction case, where defects may be latent." *Conte,* 63 N.E.3d at 1255. However, that case is inapposite because there, the court did not decide that issue and ultimately held that it was "within the purview of the arbitrator to determine the reasonableness of the reduced statute of limitations, and to determine whether there is any tension between the limitation and Ohio law." *Id.*

In *R.E. Holland Excavating v. Board of County Commissioners,* the state appellate court, affirming the trial court's order on a motion for summary judgment, upheld a sixty-day time limitation for bringing a claim. 729 N.E.2d at 1259. In that case, "[u]nder the terms of the contract, Holland had sixty days after the denial of its claim by the engineer within which to institute any legal action." *Id.* In *R.E. Holland Excavating*, once defendant denied plaintiff's claim, plaintiff knew it had grounds to bring a lawsuit. This Court is unsure how this decision supports the existence of a public policy exception, especially given that the Court upheld that sixty-day limitation as reasonable.[12] In

---

[12] The Court finds Plaintiffs' attempt to argue that in *Holland* the court remarked that "[i]t could be argued that since this case involved an ongoing long-term event, Holland could not comply with the notice provision within the time provided for in the contract" to be unpersuasive. *See* (Doc. No. 8 at PageID # 135.) The court did not find that argument dispositive because Holland knew he could bring a claim within that sixty-day period. Similarly, here, Plaintiffs did notice water

*Holland*, the state appellate court may have affirmed the trial court's ruling, but it clarified that it did so on other grounds. *Id*. at 1258 ("We agree with the trial court's decision to grant summary judgment, albeit for different reasons.") In doing so, it rejected the trial court's finding that the sixty-day limitation was void under public policy,[13] finding instead that the limitation was reasonable. *See id*.

In sum, neither Plaintiffs' references to these cases nor their general contention that the decisions cited by Defendant do not involve latent defects, support Plaintiffs' argument that the one-year time limitation is void under the public policy exception. Plaintiffs have not pointed to a policy that precludes parties from shortening the statute of limitations through contract. Their sweeping assertion that "contractual limitations do not make sense in the context of new construction" fails. (Doc. No. 13 at PageID # 165.) As Defendant also points out, "[h]ad the General Assembly intended to forbid time limitations altogether, it would have said so expressly." (Doc. No. 14 at PageID # 175.) The law allows parties to shorten statutes of limitations through contract, and Plaintiffs have not demonstrated that public policy precludes the parties from making such an agreement here.

### 3. A Limitations Period is Not a Waiver of the Duty to Perform in a Workmanlike-Manner

The HCSSA prohibits home construction service suppliers from "[f]ail[ing]to perform the home construction service in a workmanlike manner" and prohibits parties from "[m]aking the performance of any home construction service contingent upon an owner's waiver of any rights this

---

issues within the one-year period, put NVR on notice of the water issues, and knew they could file a lawsuit against NVR when they noticed these issues during the first year. (Doc. No. 1-1 at ¶ 11, PageID # 9.) Further, since Plaintiffs had photographs of the construction that they reviewed after their basement flooded, they could have looked at those photographs before the one-year limitations period expired, to determine any issue that might have caused the water issues. (*Id*. at ¶ 36, PageID # 11.)

[13] Despite this finding, the trial court ultimately granted summary judgment finding that Plaintiff still waited too long to file suit. *Id*.

chapter provides." R.C. 4722.03 (A)(3)(d), (A)(4).[14] "'Waiver' is defined as a voluntary relinquishment of a known right." *State ex rel. Wallace v. State Med. Bd. of Ohio*, 732 N.E.2d 960, 965 (Ohio 2000). Plaintiffs argue that "[e]liminating the duty to build in a workmanlike manner nullifies protections of the [HCSSA]." (Doc. No. 13 at PageID # 167) (emphasis omitted). Defendant disagrees, asserting that "[t]he HCSSA's anti-waiver provision does not prohibit reasonable limitations periods, and a limitations period is not a waiver of the workmanlike-manner duty." (Doc. No. 14 at PageID # 174) (emphasis omitted).

For the following reasons, the Court agrees with Defendant. First, Plaintiffs have not shown how a mere restriction on the amount of time they had to bring their claims constitutes "a voluntary relinquishment of a known right." *State Med. Bd. of Ohio*, 732 N.E.2d at 965. As the Court held in *Amos*:

> [C]ontrary to [p]laintiffs' legal theory, the Limitations Clause did not actually result in their waiver of the right to sue under the HCSSA. They had that right for the first year after closing. So they did not *waive* a cause of action for recission; they contracted for a definite time period within which they would have to bring that cause of action. This is a permissible practice. *See, e.g., Heimeshoff*, 571 U.S. at 107 (parties may contract for a definite limitations period when the statute creating the cause of action is silent on the issue). The fact that [p]laintiffs brought the case after the agreed-upon time had expired does not mean that they had altogether waived the right to bring the case earlier. Simply, the Limitations Clause is not a waiver; it's a limitation.

2022 WL 980676, at *4.[15] Plaintiffs still had one year to bring a claim against Defendant. As discussed above, they were on notice of the water issues within that one-year time frame, and although

---

[14] This Court acknowledges Plaintiffs' assertion that a builder's duty to perform in a workmanlike manner has been enshrined in Ohio law long before the passage of the HCSSA. *See, e.g.*, *Mitchem v. Johnson*, 218 N.E.2d 594, 599 (Ohio 1966) ("A duty is imposed by law upon a builder-vendor of a real-property structure to construct the same in a workmanlike manner and to employ such care and skill in the choice of materials and work as will be commensurate with the gravity of the risk involved in protecting the structure against faults and hazards, including those inherent in its site.").

[15] Plaintiffs argue that "the Southern District's reliance on the *Heimeshoff* case [in *Amos*] is misplaced, as that case dealt with civil actions under [29 U.S.C. § 1132(a)(1)(B)], not latent defects in a new construction home." (Doc. No. at PageID

23

this Court acknowledges Plaintiffs' many efforts to find the source of the flooding, *see* (Doc. No. 1-1, ¶¶ 39-45), nothing precluded them from arranging an inspection sooner.

Second, even assuming for the sake of argument that the limitation provision constitutes a waiver, Plaintiffs do not argue that Defendant's performance of the contract was "contingent upon" their purported waiver of this right.  *See* R.C. 4722.03 (A)(4).  In *Amos*, the court held that:

> [E]ven granting for discussion's sake the premise that limiting the timeline to bring suit acts as a waiver, there is no evidence that [NVR] "ma[d]e the performance of [the] home construction service *contingent* upon" that limitation. Although [p]laintiffs negotiated parts of the contract, nothing suggests that [p]laintiffs tried and failed to negotiate the Limitations Clause out of the Purchase Agreement.  Nor do the parties or record indicate that [NVR] insisted on the inclusion of the Limitations Clause to the point that it would have refused to contract with [p]laintiffs without it.  By all accounts, [p]laintiffs signed the Purchase Agreement voluntarily.  Absent is any evidence that [NVR] conditioned the build on an abridgement of [p]laintiffs' HCSSA rights to sue for recission.  So it cannot be the case that the builder made the construction *contingent* upon the owners limiting their ability to bring a cause of action after the first year.

2022 WL 980676, at *5.  Likewise, here, Plaintiffs do not allege that they attempted to negotiate the limitations period nor do they argue that performance of the contract was premised on their alleged waiver of this right.

### 4. The Statute of Repose Does Not Support a Public Policy Forbidding Contractual Limitations Periods.

Plaintiffs argue that R.C. 2305.131(A)(1) extends the statute of repose from four (4) years to ten (10) years for latent defects.  (Doc. No. 13 at PageID # 164) (citing R.C. 2305.131(A)(1)). Plaintiffs assert that this statute of repose rejects the view "that a contractual limitations clause should be allowed to limit the time to bring a suit for a latent defect."  Additionally, Plaintiffs argue that the

---

# 164.)  As this Court has already explained, here, the parties were permitted to contract for a limitation for when the Plaintiffs could bring suit.  The fact that *Heimeshoff* was an action brought under E.R.I.S.A. does not invalidate the longstanding principle in Ohio law that allows parties to shorten statutes of limitations through contract.

statute of repose implicitly demonstrates that "public policy also rejects Defendant's attempts to get Plaintiffs to waive the 'discovery rule,' by acknowledging that some discovery of latent defects simply is not possible within a four year period and may take up to ten years to discover." (*Id.* at PageID #s 164-65.)

Defendant asserts that "Plaintiffs' reliance on Ohio's construction statute of repose is misplaced because the statute is unrelated to the contractual-limitations issue before this Court." (Doc. No. 14 at PageID # 176.)[16]  Defendant argues that "[t]he construction statute of repose does not express a public policy forbidding contractual limitations periods." (*Id.*) (emphasis omitted).  It maintains that "[t]he statute of repose cannot be read to expand the time for homeowners to sue for construction defects or to create any substantive right to bring such claims." (*Id.*) (citing R.C. 2305.131(E)) ("This section does not create a new cause of action or substantive legal right against any person resulting from the design, planning, supervision of construction, or construction of an improvement to real property.").[17]

---

[16] Defendant argues that "the statute of repose serves primarily as a protective statute for the construction industry, ensuring that contractors and design professionals are not haled into court decades after completing a project." (Doc. No. 14 at PageID # 176.) (citing *Bd. of Educ. of Martins Ferry City Sch. Dist. v. Colaianni Constr., Inc.*, 219 N.E.3d 102, 1043 (Ohio App. 7th Dist. 2023) (quoting 2004 Ohio Laws 144 (Am. Sub. S.B. 80), § 3(B)(4)).  However, that is not the only stated purpose of the statute of repose.  By increasing the number of years parties have to bring a claim, the statute also aims to "strike[] a rational balance between the rights of prospective claimants and the rights of design professionals, construction contractors, and construction subcontractors." *Bd. of Educ. of Martins Ferry City Sch. Dist.*, 219 N.E.3d at 1043 (quoting 2004 Ohio Laws 144 (Am. Sub. S.B. 80), § 3(B)(5)).

[17] Defendant argues that the statute of repose "protects builders from indefinite exposure to tort-style claims." (Doc. No. 14 at PageID # 177.)  However, "Ohio's construction statute of repose applies to all causes of action, whether sounding in tort or contract, that seek to recover damages against a person who performed services for the improvement to real property or a person who furnished the design, planning, supervision of construction, or construction of the improvement to real property for an injury to real property that arises out of a defective and unsafe condition of an improvement to real property." *Union Loc. Sch. Dist., Bd. of Educ. v. Grae-Con Constr., Inc.*, 137 N.E.3d 122, 130 (Ohio App. 7th Dist. 2019).

This Court agrees with Defendant that "the statute of repose is a procedural outside limit, not (as Plaintiffs argue) a minimum guaranteed window within which suit must be allowed."  (*Id.* at PageID # 175.)  As Defendant correctly points out, the statute of repose "is a shield, not a sword." (*Id.* at PageID # 176.)  Thus, the Court finds that R.C. 2305.131(A)(1) does not preclude parties from shortening a statute of limitations through contract.[18]

## V.      Conclusion

This Court sympathizes with Plaintiffs' plight.  Nevertheless, it finds that the time limitation is reasonable and that it cannot create a public policy exception where none exists.  For the reasons set forth above, Defendant's Motion (Doc. No. 6) is GRANTED.[19]

**IT IS SO ORDERED.**

_s/Pamela A. Barker_
PAMELA A. BARKER
Date:  March 13, 2026                    U. S. DISTRICT JUDGE

---

[18] Since this Court is not persuaded that the time limitation is against public policy exception, this Court need not reach the issue of the limited warranty.

[19] As noted in its Motion, Defendant argues that Plaintiffs should not be granted leave to amend.  (Doc. No. 6-1 at PageID # 112.)  Plaintiffs do not request leave to amend at any point in their briefing.  Accordingly, the Court need not address this issue.

26